Ferdinand Suren, Plaintiff, *v.* Louis Handel and Another, Defendants.

Second Department, June 22, 1923.

Master and servant — action to recover balance due on salary — contract provided for payment of money salary and shares of stock if plaintiff worked for one year — ultra vires not defense — contract, partly performed, was not void under Statute of Frauds — plaintiff is entitled to recover.

In an action to recover a balance due on salary, it appeared that the plaintiff was hired by the individual defendant who was the owner of all the stock of the corporation defendant, except two shares; that the agreement was oral and provided for the payment of a weekly salary and the delivery to the plaintiff of thirty-three shares of stock of the defendant corporation with accrued profits in case the plaintiff continued in his employment for a period of one year; that prior to making the oral agreement the plaintiff refused to sign a five-year written agreement; that the plaintiff worked for more than a year and received the money part of his salary. This action is brought to recover the value of the stock and the profits thereon which it was agreed the plaintiff was to receive.

*Held,* that the jury rightly found that the oral agreement was to be performed within a year; that the defense of *ultra vires,* although not pleaded, would not defeat plaintiff's right of recovery; and that the Statute of Frauds would not be a defense, since the contract was fully performed on the part of the plaintiff and performance accepted by the defendant.

Motion by the defendants, Louis Handel and another, for a new trial upon a case containing exceptions, ordered to be heard at the Appellate Division in the first instance after a verdict in favor of the plaintiff upon a trial before the court and a jury at the Kings Trial Term, Part 5, in February, 1923.

*Allen C. Bragaw,* for the plaintiff.

*A. P. Bachman,* for the defendants.

KELLY, P. J.:

The plaintiff sued to recover damages for the failure of defendants to pay him a balance due for services under a contract by which plaintiff was engaged to act as superintendent for the defendant corporation. The contract was oral and the plaintiff testified that it was made on September 1, 1918, by the individual defendant who was the president of the corporation and the owner of four hundred and ninety-eight of the five hundred shares of the capital stock of the company, the other two shares standing in the names of his daughter and his lawyer — one share each. The individual defendant, his daughter and his lawyer constituted the board of directors, and the evidence is that the individual defendant was in supreme control. The plaintiff testified that the individual defendant was very anxious to obtain his services, being without a man to do the work, and that he promised for himself and his corporation to pay the plaintiff thirty-five dollars per week as salary and if he served for a year to give him as additional compensation thirty-three shares of the capital stock of the company with the portion of the profits earned by such shares during the term. And if plaintiff continued in the service for five years, the same compensation with similar payments in stock and profits was to continue. The plaintiff performed his part of the agreement and was paid the cash salary, and at the end of the year, about September 1, 1919, he says, he asked for the thirty-three shares of stock and his share of the profits. He testifies that the individual defendant put him off, saying the books would be closed at the end of the year and that it would be more convenient to adjust the stock interest at that time. Plaintiff says he agreed to this, but asked and obtained one hundred dollars on account. He continued to serve the defendants during September, October, November and December, 1919, and was paid the cash thirty-five dollars a week, but on January first defendants still neglected to turn over to him the stock and share in the profits promised him. He says that the individual defendant, the president of the corporation, did not deny his right to the stock but " squirmed " and failed to make good the promise, so he left the employ of defendants and sued for damages. There was evidence that the stock to which plaintiff said he was entitled was worth at least $2,200 and that his share of the profits unpaid was at least $130, and the jury gave him a verdict for that amount.

It is somewhat difficult to ascertain the exact position of the defendants. There is no denial that the plaintiff was in the service of the defendants for the period claimed. As I understand it, the individual defendant says plaintiff should recover, if at all, from

the corporation, and the corporation says that the agreement for the stock interest was *ultra vires*, and they both say that the agreement to employ plaintiff was oral and not to be performed within a year and that it is void under the Statute of Frauds. Neither the defense of the Statute of Frauds or *ultra vires* was pleaded in the answers interposed by the defendants.

It appears that late in August, 1918, when Mr. Handel, the individual defendant, was anxious to obtain plaintiff's services and to induce him to give up his (plaintiff's) private business and to come to work for defendants, he had his lawyer, the owner of one of the outstanding shares of the company's stock, prepare a written contract providing for the thirty-five dollars per week cash payment and the interest in the stock and the profits as testified to by the plaintiff, but the agreement provided for a term of five years, with annual allotments of the stock. The plaintiff demurred to binding himself for five years and, therefore, refused to sign the written agreement. As drawn, it was between the corporation, the individual defendant and the plaintiff. Plaintiff testified that on September first he agreed orally with Mr. Handel, acting individually and as the owner of the corporation, to enter on the employment for one year on the terms proposed, in order to ascertain whether he could get along with Mr. Handel. He testified that Mr. Handel agreed to this and that the employment was by the corporation and Mr. Handel jointly, and that they bound themselves to pay him. Notwithstanding that the defense of the Statute of Frauds was not pleaded, the learned trial justice told the jury that unless they found the oral agreement on September 1, 1918, as testified to by plaintiff, he could not recover. The jury have found for plaintiff and that the oral agreement was to be performed within a year.

As to the claim of *ultra vires*, although not pleaded by defendants, the plaintiff is not suing for specific performance or to compel the delivery of stock. He asserts a promise of certain compensation for his services made by both defendants, performance on his part, and payment of part only of the compensation agreed upon. The jury has found in his favor. I do not see how they could have found otherwise, because Mr. Handel, the president of the corporation and practically the owner of all of the stock, testified that he was entirely willing to sign the written agreement prepared by his lawyer under his direction and which called for the compensation claimed. Part of it had been paid. The jury, upon competent evidence, has found the balance due. There was no substantial dispute as to the compensation agreed to be paid to plaintiff in cash and stock. The Statute of Frauds may be pleaded

against an executory contract, " but having been voluntarily performed by both parties, neither could afterwards be heard to allege its invalidity, and it controlled the terms of service and compensation under it, as against both parties, as well as afforded an authority from which the intention of the parties in relation to a further contract could be inferred. In other words, after execution it was to all intents valid." (*Adams* v. *Fitzpatrick*, 125 N. Y. 124.) The same reasoning applies to plaintiff's service during the last four months of 1919. (Id.) The service was performed and accepted by the defendants. I can see nothing in the exceptions presented in the record which warrants interference with the verdict.

The defendants' exceptions should be overruled, with costs, and judgment directed in favor of the plaintiff upon the verdict.

Present — KELLY, P. J., RICH, JAYCOX, MANNING and KELBY, JJ.

Defendants' exceptions overruled, with costs, and judgment unanimously directed in favor of the plaintiff upon the verdict.